PEOPLE v SUSALLA

1. FORGERY—CHECK—SIGNATURE—UNAUTHORIZED SIGNATURE.

An individual who signs his or her own name to a company check, without authority to do so, is guilty of forgery.

2. FORGERY—STATUTES—INTERPRETATION—COMMON LAW.

The Michigan forgery statute unlike the Federal statute does not require resort to the common law for interpretation (MCLA 750.248).

3. FORGERY—FRAUD—SIGNATURE.

Forgery includes any act which fraudently makes an instrument appear to be what it is not and nowhere is there a requirement that a signature is necessary, much less a fictitious one, before something is a forgery.

4. FORGERY—CHECK—SIGNATURE—UNAUTHORIZED SIGNATURE—FALSE INSTRUMENT—FRAUD—INTENT.

Defendant created a business check by signing his name to a company check and the check would not have been negotiable without a signature, therefore, the signing was itself the act which made the false instrument and he had no authority to do so; therefore, he acted with fraudulent intent and this is precisely the kind of false making punishable by Michigan's forgery statute (MCLA 750.248).

5. FORGERY—STATUTES—CHECK—SIGNATURE.

The offense of forgery is complete when a person falsely makes any writings enumerated in the forgery statute, with intent to deceive, in a manner which exposes another to loss; this includes the signing of one's own name to a business check, without authority to do so (MCLA 750.248).

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5] 36 Am Jur 2d, Forgery § 15 *et seq.*
Alteration of figures indicating amount of check, bill, or note, without change in written words, as forgery, 64 ALR2d 1029.
[2] 36 Am Jur 2d, Forgery § 31.
[3] 36 Am Jur 2d, Forgery § 13.
Procuring signature by fraud as forgery, 11 ALR3d 1074.

Appeal from Court of Appeals, Division 2, Bronson, P. J., and Fitzgerald and O'Hara, JJ., reversing Macomb, Howard R. Carroll, J. Submitted June 6, 1974. (No. 17 June Term 1974, Docket No. 55,023.) Decided August 2, 1974.

46 Mich App 473 reversed.

Eugene Susalla was convicted of forgery and uttering and publishing a forged instrument. Defendant appealed to the Court of Appeals. Reversed. The people appeal. Reversed and trial court affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Stephen F. Osinski,* Assistant Prosecuting Attorney, for the people.

*Federlein, Grylls & McNelis, P. C.,* for defendant on appeal.

WILLIAMS, J. We are confronted by only one issue in this case: whether an individual who signs his or her own name to a company check, without authority to do so, is guilty of forgery. The trial court answered affirmatively; the Court of Appeals said no. We agree with the trial court. We therefore reaffirm the definition of forgery we used in *In re Stout,* 371 Mich 438; 124 NW2d 277 (1963), reverse the Court of Appeals and affirm the trial court.

## I. FACTS

On November 7, 1970, defendant Eugene Martin Susalla purchased a red hunting suit and boots, paying for them with a business check of the M &

J Uniform Shoppe. Defendant had no connection with the company and, in fact, the Shoppe had been out of business three or four years. The check had no designation by what authority the drawer signed the instrument, but the signature line was immediately below the company name imprinted on the check.

Defendant signed his own name to the check and wrote his driver's license number on the back. Although he did not affirmatively represent himself as an owner or other officer of the company, defendant, in responding to the store manager's question, said that business was not bad. The manager also testified he treated the check as if it were an ordinary business check. The check was returned, marked account closed.

After a full jury trial commencing September 21, 1971, defendant was found guilty of violation of MCLA 750.248; MSA 28.445, forgery,[1] and MCLA 750.249; MSA 28.446, uttering and publishing a forged instrument.[2]

---

[1] "Sec. 248. (1) Any person who shall falsely make, alter, forge or counterfeit any public record, or any certificate, return or attestation of any clerk of a court, public register, notary public, justice of the peace, township clerk, or any other public officer, in relation to any matter wherein such certificate, return or attestation may be received as legal proof, or any charter, deed, will, testament, bond or writing obligatory, letter of attorney, policy of insurance, bill of lading, bill of exchange, promissory note, or any order, acquittance of discharge for money or other property, or any waiver, release, claim or demand, or any acceptance of a bill of exchange, or indorsement, or assignment of a bill of exchange or promissory note for the payment of money, or any accountable receipt for money, goods or other property, with intent to injure or defraud any person, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 14 years."

[2] "Sec. 249. Uttering and publishing forged instruments—Any person who shall utter and publish as true, any false, forged, altered or counterfeit record, deed, instrument or other writing mentioned in the preceding section, knowing the same to be false, altered, forged or counterfeit, with intent to injure or defraud as aforesaid, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 14 years."

He received concurrent sentences of 7–14 years on both counts. Motion for new trial was denied. The Court of Appeals reversed unanimously, holding that although this "resourceful fellow" might be guilty of a whole panoply of crimes, "one simply can't 'forge' his own name". *People v Susalla,* 46 Mich App 473, 476; 208 NW2d 221 (1973). Since the forgery conviction was overturned, the uttering and publishing conviction also fell. We granted leave on September 27, 1973. 390 Mich 779 (1973).

## II. *In re Stout* CONTROLLING.

In our opinion this case is controlled by *In re Stout,* 371 Mich 438; 124 NW2d 277 (1963). Petitioner Stout brought habeas corpus to contest his commitment as incompetent to stand trial for a felony. He had been charged with the felony of forgery and he claimed that his signing his own name as a company representative on the back of a draft without authority to do so was not a forgery and therefore not a felony. These facts are substantially similar to the instant case.

This Court in *Stout,* relying on *People v Marion,* 29 Mich 31, 35 (1874) found forgery includes "any act which fraudulently makes an instrument 'purport to be what it is not.' " 371 Mich 438, 441, and that therefore *Stout* was properly charged with a felony. We reaffirm that definition.

## III. DEFENDANT'S CASES DISTINGUISHED.

Defendant would have us instead rely on the dissent in *Stout* and on *Gilbert v United States,* 370 US 650; 82 S Ct 1399; 8 L Ed 2d 750 (1962) on which that dissent relied. Justice Harlan, writing

for the 4-3 majority, applied the common law meaning to the Federal statute on the basis there was no legislative interpretation. The common-law interpretation did not include misrepresentation of agency. We believe that the Michigan statute unlike the Federal statute does not require resort to the common law for interpretation and hence prefer to follow *Stout* and not *Gilbert.*[3]

Defendant also relies on *People v Brown,* 178 Mich 155; 144 NW 477 (1913). The facts in this case are altogether different. Defendant made out a personal check to himself and signed it, using an Anglican name he commonly went by rather than his own long foreign name. It was accepted by a friend of many years who knew and recognized him and who also knew his right name and that he commonly used the name he employed on the check. There were, of course, no funds in his account at the bank.

## IV. OTHER STATES.

Decisions in our sister states differ.[4] We therefore find both these, and *Gilbert,* inadequate as precedent. Additionally, because we are dealing with a matter involving construction of our own statute, we are not required to find safe passage through such a morass to come up with what our own Legislature intended.

---

[3] Incidentally, in a prestatutory case where the facts were similar to the instant case, this Court reached a result similar to *Gilbert's. Bank of Detroit v Standard Accident Insurance Co.,* 245 Mich 14; 222 NW 134 (1928).

[4] *See, e.g., In re Clemons v Alvis,* 168 Ohio St 83; 151 NE 553; 5 Ohio Ops 349 (1958) for one extreme, where signing one's own name to a personal check drawn on a bank where defendant had no checking account was forgery. For a survey of the positions of several states, *Tiarks v First National Bank of Mobile,* 182 So 2d 366 (Sup Ct Ala, 1966).

## V. TEXTS.

Most writers and commentators agree that forgery is "the false making or material alteration, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability." 2 Wharton's Criminal Law & Procedure, § 621, p 396.[5] The hornbook most commonly used in Michigan practice notes that,

"In order to constitute forgery there must be a making of a false instrument for the purpose of creating another's liability, with fraudulent intent to injure him. Such a forged instrument may be made in various ways, as by creating it entirely, by adding to or taking away from it some of its essential terms, or by procuring the signature of a person who had no intention of signing it."

3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1485, p 1867.

Therefore, it is clear that forgery includes any act which fraudulently makes an instrument appear to be what it is not. Nowhere is there a requirement that a signature is necessary, much less a fictitious one, before we can call something a forgery. For example, Professor Perkins, in his treatise, specifically explains that forgery may be committed, for example, by one using his or her own name, by false dating, or using one's name as that of another. Perkins, Criminal Law, (2d ed), p 347.


## VI. CONCLUSION.

The key appears to be that the writing itself is a

---

[5] "Forgery at the common law is the fraudulent making or alteration of a writing to the prejudice of another's right." P. F. Herrick, 3 Underhill's Criminal Evidence, (5th ed), § 770, p 1769.

lie. In the instant case, defendant created a business check by signing his name. The check would not have been negotiable without a signature, therefore, the signing was itself the act which made the false instrument. He had no authority to do so, therefore he acted with fraudulent intent. This is precisely the kind of false making punishable by our forgery statute. Had this been a personal check drawn on a bank in which he had no account, of course, defendant's signing his own name might have made him suspectible to other charges, but not forgery, because we have other statutes more precisely fitting that offense.[6] Moreover, there is missing from that offense that misrepresentation of authority which makes the check what it is not. Here, defendant falsely made and uttered a business check without apparent authority. This is more than a mere misrepresentation of agency. It is forgery.

In the presence of a statute defining a criminal offense, we will not look to the common-law meaning, as long as the statute's intent is clear. The offense of forgery is complete when a person falsely makes any writings enumberated in the statute, with intent to deceive, in a manner which exposes another to loss. This includes the signing of one's own name to a business check, without authority to do so.

No error being found, the conviction is affirmed.

[6] *E.g.*, MCLA 750.131a; MSA 28.326(1), drawing checks upon bank without any bank account.

"Sec. 131a. Any person who with intention to defraud shall make or draw or utter any check, draft or order for the payment of money to apply on an account or otherwise upon any bank or other depository who at the time of making, drawing, uttering or delivering such check, draft or order has no account in or credit with such bank or other depository for the payment of such check, draft or order upon presentation shall be guilty of a felony punishable by imprisonment in the state prison for not more than 2 years or by a fine of not more than $500. * * * "

The Court of Appeals is reversed and the trial court affirmed.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, LEVIN, and M. S. COLEMAN, JJ., concurred with WILLIAMS, J.

SWAINSON, J., concurred in the result.

J. W. FITZGERALD, J., did not sit in this case.